JOSEPH STORM *vs.* MANCHAUG COMPANY & others.

The owner of land bordering upon a stream may lawfully dig a canal upon his own land which will prevent it from being flowed by the erection or raising of a dam below, if he does not thereby divert the water from its natural course; and the fact that the owner below has already begun to build or raise his dam is immaterial.

BILL IN EQUITY, alleging that the plaintiff was owner of a mill site on Mumford River, in Douglas, on which a mill-dam has been lawfully maintained for forty years past, for the working of a mill, and that he begun in May, 1865, to raise said dam, intending to raise it three feet above its former height, and was at work upon it and had already raised a portion of it to that height, and had nearly completed the raising of the dam, by means whereof he would flow several acres of adjoining land, when the defendants proceeded to dig a canal through said adjoining land belonging to them, to such a depth and in such a manner that they would thereby draw off the water from the plaintiff's mill-pond and prevent his raising the water by his dam, as he had intended to do and had already partially done · and threatened to dig and complete the canal in such manner as to prevent his raising the water by his dam as aforesaid. The prayer was for an injunction and other relief.

A temporary injunction was granted, and the defendants filed a demurrer, which was afterwards withdrawn, and the defendants

moved that the injunction be so far modified that the defendants might be permitted to dig and construct their proposed canal so that it might prevent the plaintiff from raising the water by his proposed new dam to a height greater than he has heretofore enjoyed; and by agreement of parties the question of the right of the defendants to construct the canal was reserved, by the chief justice, for the determination of the whole court.

*F. H. Dewey*, for the plaintiff. The plaintiff had a right to raise the water as high as he thought proper, provided he did not interfere with an existing mill. *Bigelow* v. *Newell*, 10 Pick. 348. *Andover* v. *Sutton*, 12 Met. 182. *Judd* v. *Wells*, Ib. 504, 511. His right to flow the adjoining land implies that the owner thereof shall do nothing to prevent the execution of that right. Otherwise, the land owner might always prevent the erection of a dam. It is very clear that the defendants had no right to dig a canal to draw off the water from the plaintiff's pond below the height to which the water had already been raised, or to which the dam already constructed would raise it. The plaintiff contends that he has a right to raise the dam to the height to which he had raised a portion of it, and was raising it when the defendants commenced their excavation; and that the defendants cannot do anything inconsistent with this right.

*P. C. Bacon & P. E. Aldrich*, for the defendants, in addition to cases cited in the opinion, cited *Jordan* v. *Woodward*, 40 Maine, 317.

HOAR, J. The question reserved upon the report is this: Whether, if the plaintiff has begun to raise the dam connected with his mill, intending to raise it to a height which, when completed, would flow the land of the defendants, they have the right, by digging a canal on their own land before it is flowed, to prevent the flowing beyond the height to which the water was previously raised.

The right of the defendants, by the common law, to alter the surface of their own land at their pleasure, provided they do not divert the water from its natural course, is unquestionable. The plaintiff makes no claim of any interest in the land, except the

right of flowing given by statute. And he contends that, under and by virtue of the statute, he has the right to raise his dam so as to flow any land lying above him on the same stream ; that this right to flow implies that the owner of the land shall do nothing to impair or impede the exercise of the right ; and that when he began to raise his dam the right attached as fully as if the dam had been finished and the flowing had already been occasioned.

To support this claim to its full extent would require a construction of the mill acts which would give the owner of a mill-dam not merely the right to erect and maintain his dam, with the liability to make compensation for the incidental injury which it might occasion, but an easement in the land which the dam would flow ; that is, a right to appropriate the land of another to the establishment of a mill-pond, and to prevent the owner from making any use of it which would diminish the extent or capacity of such a pond. Such a construction may seem to be supported by the language of the earlier statutes. The preamble to *St.* 1713, *c.* 9, recited that when mills had been erected, " it hath sometimes so happened that some small quantity of lands or meadows have been thereby flowed and damnified, not belonging to the owner or owners of such mill or mills ; " and thereupon enacted that where any person had already or should thereafter set up any water-mill on his own land, or on land with the consent of the owner, " such owner or owners shall have free liberty to continue and improve such pond for their best advantage, without molestation." The *St.* of 1795, *c.* 74, § 1, provided that where a water-mill had been or should be erected, " and to the working of such mill it shall be found necessary to raise a suitable head of water, and in so doing any lands shall be flowed not belonging to the owner of such mill, it shall be lawful for the owner or occupant of such mill to continue the same head of water to his best advantage, in the manner and on the terms hereinafter mentioned." But by the Revised Stat utes the right conferred is only to " erect and maintain a water · mill, and a dam to raise water for working it, upon and acros: any stream that is not navigable ; " and the General Statutes

retain the same language. Rev. Sts. *c.* 116, § 1. Gen. Sts. *c.* 149, § 1.

In *Boston & Roxbury Mill Corp.* v. *Newman*, 12 Pick. 467, it was held that, under an act of the legislature which authorized the creating of a water power and tide-mill, by excluding the tide from an empty basin or reservoir upon the flats, the owner of a part of the flats could not lawfully fill them up, and thus diminish the capacity of the basin. But this was a case in which the corporation was chartered for the purpose and with the power of appropriating the specific territory to the specific object. A case much nearer in point for the plaintiff is *Judd* v. *Wells*, 12 Met. 504, in which it was decided that where the plaintiff had raised his dam under the mill acts, the defendant had no right to divert and draw off the pond thus raised, by a canal on his own land, but his remedy was for damages for the flowing under the mill acts; and an action on the case for the diversion of the water was sustained. That case was under the Revised Statutes. But it went no farther than to hold that after the pond had been created, and the land flowed, the water of the stream could not be rightfully diverted.

On the other hand, there is certainly nothing in the language of the statute as it now exists which gives any easement directly in the land flowed. It provides, in effect, that the erection of the dam shall not be an actionable nuisance, although its incidental consequence may be the flowing of land not belonging to the mill owner. And the nature and extent of the right which is thus conferred have been frequently stated in opinions given in adjudged cases, though the question itself has not been directly decided. Thus in *Williams* v. *Nelson*, 23 Pick. 141, in which the point decided was that flowing of land for a period of twenty years, without payment or claim of damages, is evidence of a right to flow without payment of damages, Chief Justice Shaw, in his statement of the principles upon which the decision was based, remarked: " The statute, strictly speaking, does not confer on the mill owner the right to flow the land of another it conveys no interest in the nature of a leasehold or easement, or otherwise, or any authority to make any actual use of the

other's land as a pond or reservoir. The owner may still em-
bank against the water, if he pleases, and thus preserve his own
land from being flowed. But the extent of the power conferred
on the mill owner by the statute is, to erect and maintain the
dam on his own land, and keep up his head of water to his own
best advantage, notwithstanding it may flow back on the land
of others."

In *Murdock* v. *Stickney*, 8 Cush. 113, where the question was
whether the mill acts applied to tide mills, the statement is
made in language very similar, and more at length. "As the
effect and object of the mill act are to take away a common law
remedy for damage done to one's land by a mill owner, it is to
that extent in derogation of the common law, and not to be car-
ried by construction beyond its plain intent and meaning. The
principle on which this law is founded is not, as has sometimes
been supposed, the right of eminent domain, the sovereign right
of taking private property for public use. It is not in any
proper sense a taking of the property of an owner of the land
flowed, nor is any compensation awarded by the public. It does
not even authorize the mill owner to use the land of another for
a reservoir, against his consent; the owner of the land may,
if he choose, dike out his own meadow, and thereby prevent the
flow of the water upon it. But the principle seems to be this :
A man may place a dam on his own land, in order to raise a
head of water for mills, in the use of which the public have an
interest; this is the extent of the direct authority given by the
statute. But in doing this, by force of the natural law by which
fluids seek a level, the water may, without the purpose and
against the wish of the mill owner, overflow the land of another,
and do him some damage. Here the law steps in and declares
that, in consideration of the advantage to the public to be de-
rived from the establishment and maintenance of mills, the
owner of the land shall not have an action for this necessary
consequential damage against the mill owner, to compel him to
prostrate his dam," &c., &c. The same doctrine is again as-
serted in *Bates* v. *Weymouth Iron Co.* 8 Cush. 548, 553.

Whether, after the dam is raised and the land flowed, the

right to have the whole water of the stream continue by its natural course without diversion; and especially whether, after a payment of gross damages, the right to the use of the whole pond, without diminution, should be regarded as acquired by purchase, are questions involving different considerations, and upon which we have now no occasion to express an opinion. For we can see no reason to doubt that the owner of land adjoining a stream, until his land is flowed by a mill-dam, has all the rights to use it which other land owners enjoy. His land may be well suited for the creation of a mill-pond, but he is under no obligation to keep it in that condition for the benefit of his neighbor. His common law right is not to be taken from him or limited, unless by a clear provision of the statute.

An attempt was made in the argument to draw an analogy from the statute regulation of the rights and powers of the owners of mill privileges upon a stream, by which a priority of right is secured by a priority of occupation for the erection of a mill. But a careful consideration would show that on this very point the right has been always determined by the express language of the statute. Before the Revised Statutes, if an upper proprietor was building a mill, he was held to have so far appropriated the water privilege that a lower proprietor could not erect a new dam, or raise an old one, to his injury. *Bigelow* v. *Newell*, 10 Pick. 348. By a slight and perhaps unintentional change of phraseology introduced into those statutes, it was held that the law was changed; and that nothing but an existing mill could prevent the lower proprietor from putting a mill-dam upon his own land, although the effect of it might be to destroy an upper privilege which its owner had previously begun to occupy. *Baird* v. *Wells*, 22 Pick. 312. This was altered, and the old rule restored, by *St.* 1841, *c.* 18. There is nothing in the statute now in force which vests any rights of flowing in the mill owner before he has actually exercised them ; or which gives the land owner compensation for any restriction upon the use of his land until the flowing takes place. A statute authority, in derogation of common law rights of property, is not to be extended by construction. We are therefore of opinion that the injunction

which has been granted must be modified, so that it shall only restrict the defendants from diverting the water from the plaintiff's pond as it existed when the bill was filed.